IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRAY FINANCIAL GROUP, INC., *et
al.*,                           :
                                :
         Plaintiffs,            :
                                :
v.                              :    CIVIL ACTION NO.
                                :    1:15-CV-0492-LMM
                                :
SECURITIES AND EXCHANGE         :
COMMISSION,                     :
                                :
         Defendant.             :

## ORDER

This case comes before the Court on Plaintiffs Gray Financial Group, Inc.

("Gray Financial"), Laurence O. Gray, and Robert C. Hubbard, IV's Motion for

Preliminary Injunction [41]. On June 3, 2015, Plaintiffs filed their Second

Amended Complaint, seeking to (1) declare the SEC's appointment and removal

processes for its Administrative Law Judges ("ALJ") unconstitutional, and (2)

enjoin Plaintiffs' administrative proceeding. The Court heard oral argument on

July 13, 2015. After a review of the record and due consideration, Plaintiffs'

Motion [41] is **GRANTED** for the following reasons:

## I. Background[1]

Plaintiff Gray Financial is an investment advisory group which is registered with the Securities and Exchange Commission ("SEC"), Georgia, and Michigan. 2d Am. Compl., Dkt. No. [28] ¶ 14. Gray Financial provides consulting services on a non-discretionary basis to public and private pension plans, including: assisting pension boards with preparation, monitoring, and annual review of investment guidelines; conducting searches, due diligence, and presentations by investment money managers; and monitoring investment performance and providing a performance analysis. Id. ¶ 15. Plaintiff Lawrence O. Gray is the founder and principal of Gray Financial, and Plaintiff Robert C. Hubbard is its Co-Chief Executive Officer. Id. ¶¶ 11-12.

Relevant here, Gray Financial, as a part of its investment services, offered Georgia pension plans an opportunity to invest in a "fund of funds alternative investment," known as Fund II. Id. ¶¶ 20-22. While Plaintiffs claim that there have been no indication of client losses due to Fund II investments, the SEC alerted Plaintiffs in August 2013 that it was investigating whether Plaintiffs' Fund II complied with the Georgia Public Retirement Systems Investment Authority Law ("Georgia Pension Law"), O.C.G.A. § 47-20-87. Id. ¶ 23.

---

[1] The following facts are drawn from the Second Amended Complaint unless otherwise indicated, and any fact finding is made solely for the purposes of this Motion.

On May 21, 2015, the SEC served Plaintiffs with an Order Instituting Cease-and-Desist Proceedings ("OIP"), which initiated the SEC's administrative enforcement action against Plaintiffs. Id. ¶ 29; OIP, Dkt. No. [41-3]. The SEC alleges Plaintiffs have violated Sections 17(a), 17(a)(1), and 17(a)(3) of the Securities Act, Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder, and Sections 206(1), 206(2), and 206(4) of the Investment Advisors Act and Rule 206(4)-8(a)(1) and (2) thereunder by offering Fund II to Georgia clients, as that fund allegedly did not comply with the Georgia Pension Law. OIP, Dkt. No. [41-3] at 7.

## A. SEC Administrative Process

The Exchange Act authorizes the SEC to initiate enforcement actions against "any person" suspected of violating the Act and gives the SEC the sole discretion to decide whether to bring an enforcement action in federal court or an administrative proceeding. See 15 U.S.C. §§ 78u(d), 78u-1, 78u-2, 78u-3. The Administrative Procedure Act ("APA"), 5 U.S.C. § 500, et seq., authorizes executive agencies, such as the SEC, to conduct administrative proceedings before an Administrative Law Judge ("ALJ"). SEC administrative proceedings vary greatly from federal court actions.

The SEC's Rules of Practice, 17 C.F.R. § 201.100, et seq., provide that the SEC "shall" preside over all administrative proceedings whether by the Commissioners handling the matter themselves or delegating the case to an ALJ; there is no right to a jury trial. 17 C.F.R. § 201.110. When an ALJ is selected by the

3

SEC to preside—as was done by the SEC in Plaintiffs' case—the ALJ is selected by the Chief Administrative Law Judge. Id. The ALJ then presides over the matter (including the evidentiary hearing) and issues the initial decision. 17 C.F.R. § 201.360(a)(1). However, the SEC may on its own motion or at the request of a party order interlocutory review of any matter during the ALJ proceeding; "[p]etitions by parties for interlocutory review are disfavored," though. 17 C.F.R. § 201.400(a).

The initial decision can be appealed by either the respondent or the SEC's Division of Enforcement, 17 C.F.R. § 201.410, or the SEC can review the matter "on its own initiative." 17 C.F.R. § 201.411(c). A decision is not final until the SEC issues it. If there is no appeal and the SEC elects not to review an initial order, the ALJ's decision is "deemed the action of the Commission," 15 U.S.C. § 78d-1(c), and the SEC issues an order making the ALJ's initial order final. 17 C.F.R. § 201.360(d)(2).

If the SEC grants review of the ALJ's initial decision, its review is essentially *de novo* and it can permit the submission of additional evidence. 17 C.F.R. §§ 201.411(a), 201.452. However, the SEC will accept the ALJ's "credibility finding, absent overwhelming evidence to the contrary." In re Clawson, Exchange Act Release No. 48143, 2003 WL 21539920, at *2 (July 9, 2003); In re Pelosi, Securities Act Release No. 3805, 2014 WL 1247415, at *2 (Mar. 27, 2014) ("The Commission gives considerable weight to the credibility determination of a law judge since it is based on hearing the witnesses' testimony and observing their

4

demeanor. Such determinations can be overcome only where the record contains substantial evidence for doing so.") (footnote and internal quotation marks omitted).

If a majority of the participating Commissioners do not agree regarding the outcome, the ALJ's initial decision "shall be of no effect, and an order will be issued in accordance with this result." 17 C.F.R. § 201.411(f). Otherwise, the SEC will issue a final order at the conclusion of its review.

If respondents such as Plaintiffs lose with the SEC, they may petition for review of the SEC's order in the federal court of appeals (either their home circuit or the D.C. Circuit). 15 U.S.C. §§ 78y(a)(1), 80a-42(a), 80b-13(a). Once the record is filed, the court of appeals then retains "exclusive" jurisdiction "to affirm or modify and enforce or to set aside the order in whole or in part." 15 U.S.C. § 78y(a)(3). The SEC's findings of facts are "conclusive" "if supported by substantial evidence." 15 U.S.C. § 78y(a)(4). The court of appeals may also order additional evidence to be taken before the SEC and remand the action for the SEC to conduct an additional hearing with the new evidence. 15 U.S.C. § 78y(a)(5). The SEC then files its new findings of facts based on the additional evidence with the court of appeals which will be taken as conclusive if supported by substantial evidence. Id.

### B. SEC ALJs

SEC ALJs, including ALJ Elliot who presides over Plaintiffs' case, are "not hired through a process involving the approval of the individual members of the

Commission." SEC Aff., Dkt. No. [35-1] ¶ 4; <u>see also</u> 5 C.F.R. § 930.204 ("An agency may appoint an individual to an administrative law judge position only with prior approval of OPM, except when it makes its selection from the list of eligibles provided by OPM. An administrative law judge receives a career appointment and is exempt from the probationary period requirements under part 315 of this chapter."). An ALJ's salary is set by statute. 5 U.S.C. § 5372.

Congress has authorized the SEC to delegate its functions to an ALJ. 15 U.S.C. §§ 78d-1(a), 80b-12. Pursuant to that authority, the SEC has promulgated regulations, which set out its ALJ's powers. 17 C.F.R. § 200.14 makes ALJs responsible for the "fair and orderly conduct of [administrative] proceedings" and gives them the authority to: "(1) Administer oaths and affirmations; (2) Issue subpoenas; (3) Rule on offers of proof; (4) Examine witnesses; (5) Regulate the course of a hearing; (6) Hold pre-hearing conferences; (7) Rule upon motions; and (8) Unless waived by the parties, prepare an initial decision containing the conclusions as to the factual and legal issues presented, and issue an appropriate order." 17 C.F.R. § 200.14(a);[2] <u>see also</u> 17 C.F.R. § 200.30−9 (authorizing ALJs to make initial decisions).

---

[2] The SEC Rules of Practice provide a similar list of powers for "hearing officers," or ALJs. 17 C.F.R. § 201.101(a)(5) ("(5) Hearing officer means an administrative law judge, a panel of Commissioners constituting less than a quorum of the Commission, an individual Commissioner, or any other person duly authorized to preside at a hearing"). 17 C.F.R. § 201.111 provides,

> The hearing officer shall have the authority to do all things necessary and appropriate to discharge his or her duties. No provision of these

Rules of Practice shall be construed to limit the powers of the hearing officer provided by the Administrative Procedure Act, 5 U.S.C. 556, 557. The powers of the hearing officer include, but are not limited to, the following:

(a) Administering oaths and affirmations;

(b) Issuing subpoenas authorized by law and revoking, quashing, or modifying any such subpoena;

(c) Receiving relevant evidence and ruling upon the admission of evidence and offers of proof;

(d) Regulating the course of a proceeding and the conduct of the parties and their counsel;

(e) Holding prehearing and other conferences as set forth in § 201.221 and requiring the attendance at any such conference of at least one representative of each party who has authority to negotiate concerning the resolution of issues in controversy;

(f) Recusing himself or herself upon motion made by a party or upon his or her own motion;

(g) Ordering, in his or her discretion, in a proceeding involving more than one respondent, that the interested division indicate, on the record, at least one day prior to the presentation of any evidence, each respondent against whom that evidence will be offered;

(h) Subject to any limitations set forth elsewhere in these Rules of Practice, considering and ruling upon all procedural and other motions, including a motion to correct a manifest error of fact in the initial decision. A motion to correct is properly filed under this Rule only if the basis for the motion is a patent misstatement of fact in the initial decision. Any motion to correct must be filed within ten days of the initial decision. A brief in opposition may be filed within five days of a motion to correct. The hearing officer shall have 20 days from the date of filing of any brief in opposition filed to rule on a motion to correct;

(i) Preparing an initial decision as provided in § 201.360;

The SEC's website also describes SEC ALJs in the following manner:

> Administrative Law Judges are independent judicial officers who in most cases conduct hearings and rule on allegations of securities law violations initiated by the Commission's Division of Enforcement. They conduct public hearings at locations throughout the United States in a manner similar to non-jury trials in the federal district courts. Among other actions, they issue subpoenas, conduct prehearing conferences, issue defaults, and rule on motions and the admissibility of evidence. At the conclusion of the public hearing, the parties submit proposed findings of fact and conclusions of law. The Administrative Law Judge prepares an Initial Decision that includes factual findings, legal conclusions, and, where appropriate, orders relief.
>
> . . .
>
> An Administrative Law Judge may order sanctions that include suspending or revoking the registrations of registered securities, as well as the registrations of brokers, dealers, investment companies, investment advisers, municipal securities dealers, municipal advisors, transfer agents, and nationally recognized statistical rating organizations. In addition, Commission Administrative Law Judges can order disgorgement of ill-gotten gains, civil penalties, censures, and cease-and-desist orders against these entities, as well as individuals, and can suspend or bar persons from association with these entities or from participating in an offering of a penny stock.

SEC Office of Administrative Law Judges, http://www.sec.gov/alj (last visited

August 3, 2015).

---

(j) Upon notice to all parties, reopening any hearing prior to the filing of an initial decision therein, or, if no initial decision is to be filed, prior to the time fixed for the filing of final briefs with the Commission; and

(k) Informing the parties as to the availability of one or more alternative means of dispute resolution, and encouraging the use of such methods.

17 C.F.R. § 201.111.

### C. Plaintiffs' Administrative Proceeding

As stated supra, the SEC filed an OIP against Plaintiffs on May 21, 2015. On June 19, 2015, Plaintiffs filed an unopposed motion to stay the administrative proceeding before the ALJ until this Court could decide this preliminary injunction motion. Despite the stay request being filed as an unopposed motion, the ALJ denied that request on June 22, 2015. Dkt. No. [45-1] at 2 ("I will abide by an injunction if it is issued; however, as of now I have been instructed to resolve this proceeding within 300 days of service of the OIP."). Plaintiffs' administrative evidentiary hearing is scheduled for October 26, 2015, before the ALJ.

On June 15, 2015, Plaintiffs filed the instant motion, asking this Court to (1) declare the SEC's appointment and removal processes for its Administrative Law Judges ("ALJ") unconstitutional, and (2) enjoin Plaintiffs' administrative proceeding. The Court heard oral argument on July 13, 2015. The SEC opposes Plaintiffs' Motion, arguing that (1) this Court does not have subject matter jurisdiction, and (2) even if it does, Plaintiffs have failed to meet their burden under the preliminary injunction standard.

## II. Discussion[3]

### A. Subject Matter Jurisdiction

The SEC first contends that this Court does not have subject matter jurisdiction because the administrative proceeding, with its eventual review from a court of appeals, has exclusive jurisdiction over Plaintiffs' constitutional claims. In other words, the SEC contends that its election to pursue claims against Plaintiffs in an administrative proceeding, "channels claims like Plaintiffs' through the SEC administrative process and then directly to an appropriate court of appeals whose jurisdiction is 'exclusive.'" Def. Br., Dkt. No. [48] at 18; see 15 U.S.C. §§ 80a-42(a), 80b-13(a); supra at 3-5 (explaining the administrative review procedure). The SEC thus argues that §§ 80a-42 and 80b-13 are now Plaintiffs' exclusive judicial review channels, and this Court cannot consider Plaintiffs' constitutional claims; judicial review can only come from the courts of appeal following the administrative proceeding and the SEC's issuance of a final order in Plaintiffs' case.

The SEC's position is in tension with 28 U.S.C. § 1331, which provides that federal district courts "have original jurisdiction of all civil actions arising under

[3] On June 8, 2015, this Court issued a preliminary injunction in Hill v. SEC, No. 1:15-cv-1801-LMM, finding that (1) subject matter jurisdiction existed to address claims such as the Plaintiffs' here, and (2) the Hill plaintiff had demonstrated a likelihood of success on the merits that the SEC's ALJ appointment process violated the Appointments Clause. Much of the SEC's briefing, therefore, deals with the Court's prior holding in Hill. Accordingly, while many of the arguments in this case are unchanged from Hill, the Court will occasionally address the SEC's position in Hill to give context for the SEC's arguments and the Court's holding in this case.

the Constitution, laws, or treaties of the United States," and 28 U.S.C. § 2201, which authorizes declaratory judgments. "[I]t is established practice for [the Supreme] Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." Bell v. Hood, 327 U.S. 678, 684 (1946); Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 491 n.2 (2010). And "injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001); see also 5 U.S.C. § 702 (stating that under the Administrative Procedure Act, any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof" and may seek injunctive relief).

To restrict the district court's statutory grant of jurisdiction under § 1331, there must be Congressional intent to do so. The Supreme Court has held that, "[p]rovisions for agency review do not restrict judicial review unless the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" Free Enterprise, 561 U.S. at 489 (quoting Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207, 212, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994)).

The SEC contends that despite statutory language providing that these types of enforcement actions could be heard in *either* the district court *or* administrative proceedings, once the SEC selected the administrative forum,

Plaintiffs were bound by that decision and §§ 80a-42 and 80b-13 became the exclusive judicial review provisions. The SEC argues that Congress declared its intent for the administrative proceeding to be the exclusive forum for judicial review for these cases by allowing the SEC to make the administrative proceeding its forum choice. <u>See</u> Def. Br., Dkt. No. [48] at 19-21 (citing <u>Thunder Basin</u>, 510 U.S. at 207-16).

The Court finds, however, that Congress's purposeful language allowing *both* district court and administrative proceedings shows a different intent. Instead, the clear language of the statute provides a choice of forum, and there is no language indicating that the administrative proceeding was to be an exclusive forum. There can be no "fairly discernible" Congressional intent to limit jurisdiction away from district courts when the text of the statute provides the district court as a viable forum. In fact, the SEC admitted at the hearing that under the statutory scheme, it could choose to bring both an administrative proceeding and a district court action at the same time against the same person involving the same case. The SEC then argued that Congress intended to give the SEC the right to split the proceedings into two different forums but did not intend to give Plaintiffs that same right. The clear language of the statute does not support that interpretation.

The SEC cannot manufacture Congressional intent by making the forum choice for Congress; Congress must express its own intent within the language of the statute. Similarly, in <u>Free Enterprise</u>, the Supreme Court held that the text of

§ 78y—a substantively identical provision, in relevant part, to the ones at issue here—"does not expressly limit the jurisdiction that other statutes confer on district courts. See, e.g., 28 U.S.C. §§ 1331, 2201. Nor does it do so implicitly." 561 U.S. at 489.

Here, the Court finds that because Congress created a statutory scheme which expressly included the district court as a permissible forum for the SEC's claims, Congress did not intend to limit § 1331 and prevent Plaintiffs from raising their collateral constitutional claims in the district court. Congress could not have intended the statutory review process to be exclusive because it expressly provided for district courts to adjudicate not only constitutional issues but Exchange Act violations, at the SEC's option. See Elgin v. Dep't of Treasury, ___ U.S. ___, 132 S. Ct. 2126, 2133 (2012) ("To determine whether it is 'fairly discernible' that Congress precluded district court jurisdiction over petitioners' claims, we examine the [the Exchange Act]'s text, structure, and purpose.").

The Court also does not find that Thunder Basin prevents this finding. The SEC claims that the SEC's judicial review process is "virtually identical" to the Mine Act's, and thus this Court should find—as the Supreme Court did in Thunder Basin—that the SEC's judicial review scheme is "exclusive." Def. Br., Dkt. No. [48] at 19. Pretermitting the fact that the Mine Act did not create the forum selection provision which the SEC enjoys here, Thunder Basin was a challenge to the agency's interpretation of a statute it was charged with enforcing, as opposed to here, where Plaintiffs are challenging the validity of the

13

administrative process itself. The nature of the claims at issue in <u>Thunder Basin</u>

determined that the constitutional claims were required to go through that review

scheme.[4] Because a materially different challenge exists in the instant case, the

Court therefore does not find the SEC's administrative proceeding is exclusive

pursuant to <u>Thunder Basin</u>.

But even if Congress's intent cannot be gleaned from Congress's purposeful

choice to include the district court as a viable forum, the Court still finds that

jurisdiction would be proper as Congress's intent can be presumed based on the

standard articulated in <u>Thunder Basin</u>, <u>Free Enterprise</u>, and <u>Elgin</u>. A court may

"presume that Congress does not intend to limit jurisdiction" if (1) "a finding of

preclusion could foreclose all meaningful judicial review"; (2) "if the suit is wholly

collateral to a statute's review provisions"; and if (3) "the claims are outside the

agency's expertise." <u>Free Enterprise</u>, 561 U.S. at 489 (quoting <u>Thunder Basin</u>, 510

U.S. at 212-213) (internal quotations omitted). A discussion of these factors

follows.

### 1. Barring Plaintiffs' Claims Would Prevent Meaningful Judicial Review.

The SEC first argues that because Plaintiffs have a certain path to judicial

review through a court of appeals, Plaintiffs cannot demonstrate they lack

---

[4] Notably, since <u>Thunder Basin</u>, other courts have held that the Mine Act does not preclude *all* constitutional claims from district court jurisdiction. <u>See</u> <u>Elk Run Coal Co. v. U.S. Dep't of Labor</u>, 804 F. Supp. 2d 8, 19 (D.D.C. 2011) (finding that the Mine Act did not preclude "broad constitutional challenges" from district court jurisdiction, and stating that <u>Thunder Basin</u> supported such a finding).

meaningful judicial review. Def. Br., Dkt. No. [48] at 21-24. But the Court finds that requiring Plaintiffs to pursue their constitutional claims following the SEC's administrative process "could foreclose all *meaningful* judicial review" of their constitutional claims. Free Enterprise, 561 U.S. at 489 (emphasis added) (quoting Thunder Basin, 510 U.S. at 212-213); see Duka, 2015 WL 1943245, at *5.

Plaintiffs' claims go to the constitutionality of Congress's entire statutory scheme, and Plaintiffs specifically seek an order enjoining the SEC from pursuing them in its "unconstitutional" tribunals. If Plaintiffs are required to raise their constitutional law claims following the administrative proceeding, they will be forced to endure what they contend is an unconstitutional process. Plaintiffs could raise their constitutional arguments only after going through the process they contend is unconstitutional—and thus being inflicted with the ultimate harm Plaintiffs allege (that is, being forced to litigate in an unconstitutional forum). By that time, Plaintiffs' claims would be moot and their remedies foreclosed because the courts of appeals cannot enjoin a proceeding which has already occurred.

The SEC argues that "[a]lthough Plaintiffs may be frustrated that they cannot challenge the constitutionality of the administrative proceeding prior to enduring those very proceedings, this posture is not uncommon in our judicial system, nor a burden peculiar to this case." Def. Br., Dkt. No. [48] at 23 (quoting Tilton v. SEC, 15-cv-2472 (S.D.N.Y. June 30, 2015)) (alterations omitted). The question, then, is what does "meaningful judicial review" mean if, as the SEC contends, all that is needed is a route to eventual judicial review of some type? At

the hearing, the SEC stated that "meaningful judicial review" for purposes of Free Enterprise means that the "court is competent to address the constitutional claims at a later time." But the Court finds that the SEC's definition provides no meaning to the term "meaningful"; under the SEC's version of the term, all that is needed is judicial review, not judicial review which would provide a litigant any meaningful relief. Because the courts of appeals cannot enjoin an unconstitutional administrative proceeding which has already occurred, those claims would be moot and the meaningful review Thunder Basin contemplates would be missing.

The Court also finds that Eleventh Circuit precedent supports a finding that this delayed judicial review is not meaningful. In Doe v. F.A.A., 432 F.3d 1259 (11th Cir. 2005), thirteen aircraft mechanics sued the FAA, seeking a preliminary injunction "instructing the FAA how to proceed in its process of reexamination." 432 F.3d at 1260. An investigation revealed that the school where plaintiffs received their airmen certificates had fraudulently examined and certified some mechanics who were unqualified to hold the certification. Id. Because the FAA was unable to determine which certifications were fraudulent, the FAA wrote all relevant mechanics requiring them to recertify. Id. "The parties agree[d] that the FAA ha[d] the power to reexamine airmen and to suspend and revoke their certificates." Id. at 1262. But the plaintiffs sought and received an injunction on the basis that their due process rights would be violated by the FAA pursuing its administrative procedure.

16

The Eleventh Circuit reversed, finding that the Court did not have subject matter jurisdiction. The Court held that the mechanics' constitutional arguments were "inescapably intertwined" with the merits of an FAA order. Id. at 1263 ("The mechanics' constitutional claims (that the FAA has infringed upon their due process rights by failing to observe statutory and administrative processes) necessarily require a review of the procedures and actions taken by the FAA with regard to the mechanics' certificates. Therefore, the constitutional claims fall within the ambit of the administrative scheme, and the district court is without subject-matter jurisdiction."); see also Green v. Brantley, 981 F.2d 514, 521 (11th Cir. 1993) (holding that the Circuit lacked subject matter jurisdiction because "the merits of [plaintiff's] claims are inescapably intertwined with a review of the procedures and merits surrounding the FAA's order."). The Eleventh Circuit therefore held that "delayed judicial review (that is, review by a federal court of appeals after determination by the administrative commission rather than initial review by a federal district court)" was still meaningful in those circumstances. Doe, 432 F.3d at 1263.

The Court finds that Doe is distinguishable. The plaintiffs in Doe conceded the FAA had the authority to initiate administrative proceedings, but claimed that because the FAA had not yet initiated administrative proceedings against them, they were not required to go through the administrative process. Id. at 1262. The FAA did not have a forum selection decision, and the plaintiff conceded the FAA's ability to pursue reexamination. The Eleventh Circuit found that Plaintiffs' due

17

process challenges were "inescapably intertwined" with the merits of the FAA's actions.

Here, Plaintiffs' claims rise or fall regardless of what has occurred or will occur in the SEC administrative proceeding; Plaintiffs do not challenge the SEC's conduct in that proceeding or the allegations against them—they challenge the proceeding *itself*. See Free Enterprise, 561 U.S. at 490 ("But petitioners object to the Board's existence, not to any of its auditing standards."); Touche Ross & Co. v. SEC, 609 F.2d 570, 577 (2d Cir. 1979) ("While the Commission's administrative proceeding is not 'plainly beyond its jurisdiction,' nevertheless to require appellants to exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking.").

Plaintiffs' claims here are not "inescapably intertwined" with the merits of the SEC's securities claims against them. Therefore, while the delayed judicial review in Doe was acceptable because the constitutional claims depended on how long the FAA took to complete an admittedly constitutional process, delayed judicial review here will cause an allegedly unconstitutional process to occur.

At the hearing, the SEC argued that the Court applied the wrong standard in Hill when it looked to whether plaintiff's claims were "inescapably intertwined" with the underlying merits when deciding whether delayed judicial review was meaningful. However, the SEC ignores that the Eleventh Circuit frequently looks to whether the claims are "inextricably intertwined" in evaluating whether delayed judicial review is appropriate and did so as recently

as this year. <u>LabMD, Inc. v. F.T.C.</u>, 776 F.3d 1275, 1280 (11th Cir. 2015)[5] ("We

have consistently looked to how 'inescapably intertwined' the constitutional

claims are to the agency proceeding, reasoning that the harder it is to distinguish

---

[5] At the hearing, the SEC argued that <u>LabMD</u> supports its argument that a structural challenge to a statute is not treated differently than a claim, such as due process, which is based on what has occurred in the administrative proceeding itself—all should go through the administrative procedure and await eventual judicial review in the courts of appeal. This Court does not read <u>LabMD</u> to support that position.

In <u>LabMD</u>, the Eleventh Circuit held that because plaintiff's claims "that the FTC's actions were ultra vires and unconstitutional [] are intertwined with its APA claim for relief," those claims "may only be heard at the end of the administrative proceeding." 776 F.3d at 1277. The Eleventh Circuit went on to hold that even assuming the plaintiff's First Amendment retaliation claim was "less intertwined" with his additional claims (because the retaliatory conduct was allegedly complete at the time the complaint was filed), the Eleventh Circuit would still require the retaliation claim to be heard at the end of the administrative proceeding. <u>Id.</u> at 1280. The Eleventh Circuit noted that its prior precedent did not suggest that First Amendment retaliation claims were treated differently than other constitutional claims, thus it would send all of plaintiff's constitutional claims through the administrative proceeding since they were intertwined. <u>Id.</u> This finding concerns whether First Amendment retaliation claims are unique, not whether the Eleventh Circuit has abandoned its prior opinions that the district court should assess the interrelatedness of the claims. If that were not the case, the majority of <u>LabMD</u>'s holding—which looked to determine whether the plaintiff's claims were interrelated with the administrative proceeding—would have been irrelevant. Notably, the Eleventh Circuit's holding was specifically grounded on the fact the claims were intertwined, and the Eleventh Circuit only found the retaliation claim was "less intertwined" not that it was not intertwined at all. <u>Id.</u> at 1277.

It is also worth noting that the First Amendment retaliation claim was not a structural challenge to the administrative proceeding—it was grounded in whether the FTC filed its administrative proceeding in response to plaintiff publishing a book which allegedly exposed FTC corruption. <u>Id.</u> at 1280. Therefore, the retaliation claim related to the FTC's decision to *bring* an administrative proceeding not that the administrative proceeding itself would be invalid because of some structural defect in that process.

them, the less prudent it is to interfere in an ongoing agency process.") (citing Doe, 432 F.3d at 1263; Green, 981 F.2d at 521). It was also the SEC in Hill who argued that this line of Eleventh Circuit cases controls this issue. See Hill v. SEC, No. 1:15-cv-1801-LMM, Dkt. No. [12] at 21. Because this Court is bound by the Eleventh Circuit, it will apply the Eleventh Circuit's reasoning in assessing this question.

Waiting until the harm which Plaintiffs allege cannot be remedied is not *meaningful* judicial review.[6] See LabMD, Inc. v. F.T.C., 776 F.3d 1275, 1280 (11th

---

[6] Many of the cases the SEC cites from other districts on this issue can be distinguished from the facts here. Chau, Jarkesy v. S.E.C., 48 F. Supp. 3d 32 (D.D.C. 2014), and Altman v. U.S. S.E.C., 768 F. Supp. 2d 554 (S.D.N.Y. 2011), all addressed substantive challenges to the merits of the administrative proceedings. See Chau, 2014 WL 6984236 (challenging the SEC's conduct within the administrative proceeding, such as failing to postpone a hearing following a document dump); Jarkesy, 48 F. Supp. 3d at 32 (claiming that he could not obtain a fair hearing before the SEC because the SEC's settlements with two others stated that the plaintiff was liable for securities fraud); Altman, 768 F. Supp. 2d at 561 (involving a challenge to the SEC's own rules and stating that this was not a case where the plaintiff disputed the SEC had the expertise to hear challenges to its own rules and noted that the plaintiff did not challenge the "existence" of the proceeding but rather the "extent of the SEC's ability to sanction attorneys under the SEC's own rules").

The Court also notes that Chau's reasoning supports this Court's ruling. Specifically, The Chau court stated,

> There is an important distinction between a claim that an administrative scheme is unconstitutional in all instances—a facial challenge—and a claim that it violates a particular Plaintiffs' rights in light of the facts of a specific case—an as-applied challenge. As between the two, courts are more likely to sustain pre-enforcement jurisdiction over "broad facial and systematic challenges," such as the claim at issue in Free Enterprise Fund. This tendency is not a hard-and-fast rule, as "the distinction between facial and as-applied

Cir. 2015) ("We have consistently looked to how 'inescapably intertwined' the constitutional claims are to the agency proceeding, reasoning that the harder it is to distinguish them, the less prudent it is to interfere in an ongoing agency process.") (citing <u>Doe</u>, 432 F.3d at 1263; <u>Green</u>, 981 F.2d at 521). Therefore, the Court finds that the administrative procedure does not provide meaningful judicial review under these circumstances.

### 2. Plaintiffs' Claims Are Wholly Collateral to the SEC Proceeding.

The SEC argues that Plaintiffs' claims are not wholly collateral to the administrative proceeding because "it is an effort to short-circuit the appeals process." Def. Br., Dkt. No. [48] at 24. Specifically, the SEC claims that the Court erred in characterizing the <u>Hill</u> plaintiff's claims as "facial" as "the Supreme Court has explicitly rejected the argument that 'facial constitutional challenges' should be 'carved out for district court adjudication' when Congress has created an exclusive review scheme." <u>Id.</u> (alteration omitted) (quoting <u>Elgin</u>, 132 S. Ct. at

---

challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." Rather, it is a recognition that the <u>Thunder Basin</u> and <u>Free Enterprise</u> factors militate against jurisdiction when a pre-enforcement constitutional claim relates to factual issues that are the subject of a pending administrative adjudication.

<u>Chau v. U.S. S.E.C.</u>, No. 14-CV-1903 LAK, 2014 WL 6984236, at *6 (S.D.N.Y. Dec. 11, 2014) (footnotes omitted) (quoting <u>Elk Run Coal Co. v. Dep't of Labor</u>, 804 F. Supp. 2d 8, 21 (D.D.C. 2011) (describing <u>Free Enterprise</u> as a "broad facial and systemic challenge"); <u>Elgin</u>, 132 S. Ct. at 2135 (explaining that the as-applied vs. facial distinction is not talismanic)).

2135) (citing <u>Hill</u> Order, No. 1:15-cv-1801-LMM, Dkt. No. [28] at 18 n.5). Because the SEC argues there is no distinction between facial and as applied challenges for the purpose of assessing whether claims are wholly collateral, the SEC claims that Plaintiffs' facial challenges here should not support jurisdiction.

First, the Court did not find that the <u>Hill</u> plaintiff's claims were *per se* wholly collateral because they were facial. The footnote which the SEC cites was in the "meaningful judicial review" section of the Court's Order, and the footnote's purpose was to point out that a case which the SEC cited—<u>Chau</u>— generally supported the Court's reasoning, not that the Court was adopting a *per se* facial challenge rule. In fact, as a part of that footnote, the Court cited <u>Elgin</u> for the proposition that the as applied/facial distinction is not talismanic. <u>Hill</u> Order, No. 1:15-cv-1801-LMM, Dkt. No. [28] at 18 n.5 ("<u>Elgin</u>, 132 S. Ct. at 2135 (explaining that the as-applied vs. facial distinction is not talismanic)").

Second, the Court disagrees with the SEC's reading of <u>Elgin</u>. The <u>Elgin</u> Court only stated that the as applied/facial distinction is not a *per se* rule, not that facial challenges could never be "wholly collateral" under the <u>Elgin</u>/<u>Free Enterprise</u> factors. <u>Elgin</u>, 132 S. Ct. at 2135-36 ("the distinction between facial and as-applied challenges is not so well defined that it has some *automatic effect* or that it *must always control the pleadings* and disposition in every case involving a constitutional challenge.") (emphasis added).

Third, the SEC's argument here misunderstands the <u>Hill</u> holding regarding whether the claims are wholly collateral. In <u>Hill</u>, the SEC argued that plaintiff's

claims were not wholly collateral to the SEC proceeding because it is possible that plaintiff might not be found liable in the administrative proceeding or he might eventually obtain relief on appeal. The SEC cited Elgin and argued that "Plaintiff's claims are not collateral to the statutory provisions governing review of SEC administrative proceedings because they are the means by which Plaintiff seeks to halt his SEC proceeding." Hill Def. Br., No. 1:15-cv-1801-LMM, Dkt. No. [12] at 22 (citing Elgin, 132 S. Ct. at 2139). But the Court in Hill found Elgin distinguishable.

In Elgin, the plaintiffs had been terminated from their civil service jobs for failing to register for the selective service. Rather than appealing their terminations to the Merit Systems Protective Board or the Court of Appeals for the Federal Circuit, as required by the Civil Service Reform Act, plaintiffs filed an action in federal district court, claiming that their termination was unconstitutional. The Supreme Court ruled that the plaintiffs' claim was not "wholly collateral to the CSRA scheme," but was "a challenge to CSRA-covered employment action brought by CSRA-covered employees requesting relief that the CSRA routinely affords,"—i.e., reversal of employment decisions, reinstatement, and awarding back pay. Elgin, 132 S. Ct. at 2140 (internal quotation marks omitted).

The Court in Hill found that the plaintiff was not challenging an agency decision; the plaintiff was challenging whether the SEC's ability to conduct an administrative proceeding before its ALJs was constitutional. The Court went on

to find that what occurred at the administrative proceeding and the SEC's conduct there was irrelevant to this proceeding. See Free Enterprise, 561 U.S. at 490 ("But petitioners object to the Board's existence, not to any of its auditing standards."); Duka, 2015 WL 1943245, at *6; Gupta, 796 F. at 513 (noting the plaintiff would state a constitutional claim "even if [plaintiff] were entirely guilty of the charges made against him in the OIP"). The same reasoning applies here. Accordingly, Plaintiffs' constitutional claims are wholly collateral to the administrative proceeding.

### 3. Plaintiffs' Constitutional Claims Are Outside the Agency's Expertise.

The SEC claims that the SEC "can bring its expertise to bear on Plaintiffs' claims," and the SEC is considering similar constitutional claims in another proceeding. Def. Br., Dkt. No. [48] at 25. Despite the SEC's argument, the Court finds that Plaintiffs' Article II claims are outside the agency's expertise.

Plaintiffs' constitutional claims are governed by Supreme Court jurisprudence, and "the statutory questions involved do not require technical considerations of agency policy." Free Enterprise, 561 U.S. at 491 (alteration and internal quotations omitted) (quoting Johnson v. Robison, 415 U.S. 361, 373 (1974)); see also Thunder Basin, 510 U.S. at 215 ("[A]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.") (quoting Johnson, 415 U.S. at 368). These claims are not part and parcel of an ordinary securities fraud case, and

there is no evidence that (1) Plaintiffs' constitutional claims are the type the SEC "routinely considers," or (2) the agency's expertise can be "brought to bear" on Plaintiffs' claims as they were in Elgin. Elgin, 132 S. Ct. at 2140. Determining whether SEC ALJs are inferior officers turns more on whether the ALJ's powers and duties fit within the Supreme Court's prior jurisprudential standards for inferior officers and less on regulatory interpretation. See Duka, 2015 WL 1943245, at *7.

The Court finds that as to this factor, Plaintiffs' constitutional claims are outside the SEC's expertise, and that this Court has subject matter jurisdiction. Therefore the Court will now determine whether Plaintiffs are entitled to a preliminary injunction on their Article II claims.

### B. Preliminary Injunction

To obtain a preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the damage to the opposing party; and (4) granting the injunction would not be adverse to the public interest. Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003). "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir.

1983) (quoting <u>Canal Auth. v. Callaway</u>, 489 F.2d 567, 573 (5th Cir. 1974)). The same factors apply to a temporary restraining order. <u>Ingram v. Ault</u>, 50 F.3d 898, 900 (11th Cir. 1995). The Court will consider each factor in turn.

### 1. Likelihood of Success on the Merits

Plaintiffs bring two claims under Article II of the Constitution: (1) that the ALJ's appointment violates the Appointments Clause of Article II because he was not appointed by the President, a court of law, or a department head, and (2) the ALJ's two-layer tenure protection violates the Constitution's separation of powers, specifically the President's ability to exercise Executive power over his inferior officers. Both of Plaintiffs' arguments depend on this Court finding that the ALJ is an inferior officer who would trigger these constitutional protections. <u>See</u> U.S. Const. art. II § 2, cl. 2; <u>Freytag v. Comm'r of Internal Revenue</u>, 501 U.S. 868, 880 (1991); <u>Free Enterprise</u>, 561 U.S. at 484, 506. Therefore, the Court will consider this threshold issue first.

### a. Inferior Officer

The issue of whether the SEC ALJ is an inferior officer or employee for purposes of the Appointments Clause depends on the authority he has in conducting administrative proceedings. The Appointments Clause of Article II of the Constitution provides:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but

> the Congress may by Law vest the Appointment of such inferior
> Officers, as they think proper, in the President alone, in the Courts of
> Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. The Appointments Clause thus creates two classes of officers: principal officers, who are selected by the President with the advice and consent of the Senate, and inferior officers, whom "Congress may allow to be appointed by the President alone, by the heads of departments, or by the Judiciary." Buckley v. Valeo, 424 U.S. 1, 132 (1976). The Appointments Clause applies to all agency officers including those whose functions are "predominately quasijudicial and quasilegislative" and regardless of whether the agency officers are "independent of the Executive in their day-to-day operations." Id. at 133 (quoting Humphrey's Executor v. United States, 295 U.S. 602, 625-26 (1935)).

"[A]ny appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by § 2, cl. 2, of [Article II]." Freytag, 501 U.S. at 881 (quoting Buckley, 424 U.S. at 126) (alteration in the original). By way of example, the Supreme "Court has held that district-court clerks, thousands of clerks within the Treasury and Interior Departments, an assistant surgeon, a cadet-engineer, election monitors, federal marshals, military judges, Article I [Tax Court special trial] judges, and the general counsel for the Transportation Department are inferior officers." Kent Barnett, Resolving the ALJ Quandary, 66 Vand. L. Rev. 797, 812 (2013) (citing Free Enterprise, 561 U.S. at 540 (Breyer, J., dissenting) (citing cases)).

27

Plaintiffs claim that SEC ALJs are inferior officers because they exercise "significant authority pursuant to the laws of the Unites States" while the SEC contends ALJs are "mere employees" based upon Congress's treatment of them and the fact that they cannot issue final orders, cannot grant "certain injunctive relief," and do not have contempt power,[7] *inter alia*. The Court finds that based upon the Supreme Court's holding in Freytag, SEC ALJs are inferior officers. See also Duka, 2015 WL 1943245, at *8 ("The Supreme Court's decision in Freytag v. Commissioner, 501 U.S. 868 (1991), which held that a Special Trial Judge of the Tax Court was an 'inferior officer' under Article II, would appear to support the conclusion that SEC ALJs are also inferior officers.").

In Freytag, the Supreme Court was asked to decide whether special trial judges ("STJ") in the Tax Court were inferior officers under Article II. 501 U.S. at 880. The Government argued, much as the SEC does here, that STJs do "no more than assist the Tax Court judge in taking the evidence and preparing the proposed findings and opinion," id., and they "lack authority to enter a final decision." Id. at 881; see also Def. Br., Dkt. No. [48] at 27-32 (arguing that SEC ALJs are not inferior officers because they cannot enter final orders and are

---

[7] ALJs can find individuals in contempt, but cannot order fines or imprisonment as a possible sanction. See 17 C.F.R. § 201.180 (noting an ALJ can punish "[c]ontemptuous conduct" by excluding someone from a hearing or preventing them from representing another during the proceeding); Def. Br., Dkt. No. [48] at 33 (stating "SEC ALJs' power to punish contemptuous conduct is limited and does not include any ability to impose fines or imprisonment.").

subject to the SEC's "plenary authority"). The Supreme Court rejected that

argument, stating that the Government's argument

> ignores the significance of the duties and discretion that special trial
> judges possess. The office of special trial judge is "established by
> Law," Art. II, § 2, cl. 2, and the duties, salary, and means of
> appointment for that office are specified by statute. See Burnap v.
> United States, 252 U.S. 512, 516–517 (1920); United States v.
> Germaine, 99 U.S. 508, 511–512 (1879). These characteristics
> distinguish special trial judges from special masters, who are hired
> by Article III courts on a temporary, episodic basis, whose positions
> are not established by law, and whose duties and functions are not
> delineated in a statute. Furthermore, special trial judges perform
> more than ministerial tasks. They take testimony, conduct trials, rule
> on the admissibility of evidence, and have the power to enforce
> compliance with discovery orders. In the course of carrying out these
> important functions, the special trial judges exercise significant
> discretion.

Freytag, 501 U.S. at 881-82.

The Court finds that like the STJs in Freytag, SEC ALJs exercise

"significant authority." The office of an SEC ALJ is established by law, and the

"duties, salary, and means of appointment for that office are specified by statute."

Id.; see supra (setting out the ALJ system, to include the establishment of ALJs

and their duties, salary, and means of appointment). ALJs are permanent

employees—unlike special masters—and they take testimony, conduct trial, rule

on the admissibility of evidence, and can issue sanctions, up to and including

excluding people (including attorneys) from hearings and entering default. 17

C.F.R. §§ 200.14 (powers); 201.180 (sanctions).

Relying on Landry v. Federal Deposit Insurance Corp., 204 F.3d 1125 (D.C.

Cir. 2000), the SEC argues that unlike the STJs who were inferior officers in

<u>Freytag</u>, SEC ALJs do not have contempt power and cannot issue final orders,[8] as the STJs could in limited circumstances. In <u>Landry</u>, the D.C. Circuit considered whether FDIC ALJs were inferior officers. The D.C. Circuit found FDIC ALJs, like the STJs, were established by law; their duties, salary, and means of appointment were specified by statute; and they conduct trials, take testimony, rule on evidence admissibility, and enforce discovery compliance. 204 F.3d at 1133-34. And it recognized that <u>Freytag</u> found that those powers constituted the exercise of "significant discretion . . . a magic phrase under the <u>Buckley</u> test." <u>Id.</u> at 1134 (internal citation omitted).

Despite the similarities of the STJs and the FDIC ALJs, the <u>Landry</u> court applied <u>Freytag</u> to hold that whether the entity had the authority to render a final decision was a dispositive factor. According to the D.C. Circuit, <u>Freytag</u> "noted that [(1)] STJs have the authority to render the *final* decision of the Tax Court in declaratory judgment proceedings and in certain small-amount tax cases," and (2) the "Tax Court was required to defer to the STJ's factual and credibility findings unless they were clearly erroneous." <u>Landry</u>, 204 F.3d at 1133 (emphasis

---

[8] Plaintiffs argue that SEC ALJ's can issue final orders because if the respondent does not petition the SEC to review the ALJ's initial order and the SEC does not decide to review the matter on its own, the action of the ALJ will be "deemed the action of the Commission." 15 U.S.C. § 78d-1(c); <u>see</u> Pls. Rep., Dkt. No. [49] at 7-8. The SEC argues that the SEC retains plenary authority over ALJs and the regulations make clear that only when the SEC itself issues an order does the decision become final. Def. Br., Dkt. No. [48] at 15 (citing 17 C.F.R. § 201.360(d)(2)). This Court agrees with the SEC. Because the regulations specify that the SEC itself must issue the final order essentially "confirming" the initial order, the Court finds that SEC ALJs do not have final order authority.

in original). While recognizing that the <u>Freytag</u> court "introduced mention of the STJ's power to render final decisions with something of a shrug," <u>Landry</u> held that FDIC ALJ's were not inferior officers because did not have the "power of final decision in certain classes of cases." <u>Id.</u> at 1134.

The concurrence rejected the majority's reasoning, finding that <u>Freytag</u> "cannot be distinguished" because "[t]here are no relevant differences between the ALJ in this case and the [STJ] in <u>Freytag</u>." <u>Id.</u> at 1140, 1141. After first explaining that the Supreme Court actually found the Tax Court's deference to the STJ's credibility findings was irrelevant to its analysis,[9] the concurrence stated that the majority's "first distinction of <u>Freytag</u> is thus no distinction at all." <u>Id.</u> at 1142. The concurrence also noted that the majority's holding in <u>Landry</u> (which ultimately relied on the FDIC ALJ's lack of final order authority) was based on an *alternative* holding from <u>Freytag</u> as the Supreme Court had already determined the STJs were inferior officers before it analyzed the final order authority issue. <u>Landry</u>, 204 F.3d at 1142.

The <u>Landry</u> decision is also not persuasive as FDIC ALJs differ from SEC ALJs in that their decisions are purely recommendary under the APA. The APA requires agencies to decide whether their ALJs will issue "initial decisions" or "recommendary decisions." Initial decisions may become final "without further

---

[9] The Supreme Court stated that Tax Court Rule 183, which established the deferential standard, was "not relevant to [its] grant of certiorari," and noted that it would say no more about the rule than to say that the STJ did not have final authority to decide Petitioner's case. <u>Freytag</u>, 501 U.S. at 874 n.3; <u>see also</u> <u>Landry</u>, 204 F.3d at 1142 (Randolph, J., concurring).

proceedings unless there is an appeal to, or review on motion of, the agency within time provided by rule," while recommendary decisions always require further agency action. 5 U.S.C. § 557(b). FDIC ALJs issue recommendary decisions, whereas SEC ALJs issue initial decisions. On this ground alone, FDIC ALJs are different from SEC ALJs.

The Court concludes that the Supreme Court in <u>Freytag</u> found that the STJs powers—which are nearly identical to the SEC ALJs here—were independently sufficient to find that STJs were inferior officers. <u>See also</u> <u>Butz v. Economou</u>, 438 U.S. 478, 513 (1978) ("There can be little doubt that the role of the . . . administrative law judge . . . is ' functionally comparable' to that of a judge. His powers are often, if not generally, comparable to those of a trial judge: He may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions."); <u>see also</u> <u>Freytag</u>, 501 U.S. at 910 (Scalia, J., concurring in part and concurring in judgment, joined by O'Connor, Kennedy, & Souter, JJ.) (finding that all ALJs are "executive officers"); <u>Edmond v. United States</u>, 520 U.S. 651, 663 (1997) ("[W]e think it evident that 'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."). Only after it concluded STJs were inferior officers did <u>Freytag</u> address the STJ's ability to issue a final order; the STJ's limited authority to issue final orders was only an additional reason, not *the* reason. Therefore, the

Court finds that <u>Freytag</u> mandates a finding that the SEC ALJs exercise "significant authority" and are thus inferior officers.

At the hearing, the SEC argued <u>Freytag</u>'s finding that STJ's limited final order authority supported their inferior officer status was not an alternative holding but a "complimentary" one. The SEC also stated the Supreme Court's finding that the STJs had final order authority was the "most critical part" of the <u>Freytag</u> decision. The Court finds that understanding is based on a misreading of <u>Freytag</u>. First, the Supreme Court explicitly rejected the Government's argument in <u>Freytag</u> that "special trial judges may be deemed employees in subsection (b)(4) cases because they lack authority to enter a final decision." <u>Freytag</u>, 501 U.S. at 881. Second, the Supreme Court only discussed the STJs limited final order authority as being an *additional* reason for their inferior officer status. <u>Id.</u> at 882 ("*Even if* the duties of special trial judges under subsection (b)(4) were not as significant as we and the two courts have found them to be, our conclusion would be unchanged.") (emphasis added). It was only after the Supreme Court found STJs were inferior officers that it discussed their limited final order authority as being another ground for inferior officer status.

The Court also does not find persuasive the SEC's argument that SEC ALJs are not inferior officers because they cannot issue "certain injunctive relief" as could the Special Trial Judges in <u>Freytag</u>. Def. Br., Dkt. No. [48] at 33. It is undisputed that the *SEC Commissioners* themselves—who are indisputably

officers of the United States—cannot issue injunctive relief without going to the district court. Thus, the Court finds this a distinction without consequence.

The SEC also argues that this Court should defer to Congress's apparent determination that ALJs are inferior officers. In the SEC's view, Congress is presumed to know about the Appointments Clause, and it decided to have ALJs appointed through OPM and subject to the civil service system; thus, Congress intended for ALJs to be employees according to the SEC. See Def. Br. [48] at 34-38. But "[t]he Appointments Clause prevents Congress from dispensing power too freely; it limits the universe of eligible recipients of the power to appoint." Freytag, 501 U.S. at 880. Even if the SEC is correct that Congress determined that ALJs are inferior officers, Congress may not "decide" an ALJ is an employee, but then give him the powers of an inferior officer; that would defeat the separation-of-powers protections the Clause was enacted to protect.

In response to the SEC's argument that classifying ALJs as civil servants informs their constitutional status, the Court notes that competitive civil service by its terms also includes officers within its auspices. "Competitive [civil] service" includes with limited exceptions "all civil service positions in the executive branch," 5 U.S.C. § 2102, and "officers" are specifically included within competitive service. 5 U.S.C. § 2104. Thus, under the SEC's reasoning, all officers are now mere employees by virtue of Congress's placement of them in civil service. Such an argument cannot be accepted.

34

As well, the SEC argues that "Congress envisioned that an ALJ's 'initial decision' would be 'advisory in nature' and would merely 'sharpen[] . . . the issues for subsequent proceedings." Def. Br., Dkt. No. [48] at 29 (citing Attorney General's Manual on the Administrative Procedure Act ("Manual"), http://archive.law.fsu.edu/library/admin/1947vii.html, at 83-84 (1947)). But in reading the Manual, the Court finds the SEC has taken the Attorney General's statement out of context. With regard to ALJs "sharpening" "the issues for subsequent proceedings," the Attorney General was discussing cases in which the credibility of witnesses was not material or where the ALJ who drafted the opinion was not the hearing officer. Manual, at 83-84 ("However, in cases where the credibility of witnesses is not a material factor, or cases where the recommended or initial decision is made by an officer other than the one who heard the evidence, the function of such decision will be, rather, **the sharpening of the issues for subsequent proceedings**.") (emphasis added). The Manual also refers to ALJs as "subordinate officers" consistent with their status as inferior officers. <u>Id.</u> The Court finds the SEC's arguments unavailing; the SEC ALJs are inferior officers.

### b. Appointments Clause Violation

Because SEC ALJs are inferior officers, the Court finds Plaintiffs have established a likelihood of success on the merits of their Appointments Clause claim. Inferior officers must be appointed by the President, department heads, or

courts of law. U.S. Const. art. II § 2, cl. 2. Otherwise, their appointment violates the Appointments Clause.

The SEC concedes that Plaintiffs' ALJ, ALJ Elliot, was not appointed by an SEC Commissioner. SEC Aff., Dkt. No. [35-1] ¶ 4; see also Free Enterprise, 561 U.S. at 511-512 (finding that the SEC Commissioners jointly constitute the "head" of the SEC for appointment purposes). The SEC ALJ was not appointed by the President, a department head, or the Judiciary. Because he was not appropriately appointed pursuant to Article II, his appointment is likely unconstitutional in violation of the Appointments Clause.[10]

### 4. Remaining Preliminary Injunction Factors

The Court finds that Plaintiffs have also satisfied the remaining preliminary injunction factors. First, Plaintiffs will be irreparably harmed if this injunction does not issue because if the SEC is not enjoined, Plaintiffs will be subject to an unconstitutional administrative proceeding, and they would not be able to recover monetary damages for this harm because the SEC has sovereign immunity. See Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013) ("In the context of preliminary injunctions, numerous

---

[10] Because the Court finds Plaintiffs can establish a likelihood of success on his Appointments Clause claim, the Court declines to decide at this time whether the ALJ's two-layer tenure protections also violate Article II's removal protections. However, the Court has serious doubts that it does, as ALJs likely occupy "quasi-judicial" or "adjudicatory" positions, and thus these two-layer protections likely do not interfere with the President's ability to perform his duties. See Duka, 2015 WL 1943245, at *8-10; see also Humphrey's Executor, 295 U.S. at 628-29, 631-32.

courts have held that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable.") (collecting cases); see also Cunningham v. Adams, 808 F.2d 815, 821 (11th Cir. 1987) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."). If the administrative proceeding is not enjoined, Plaintiffs' requested relief here would also become moot as the Court of Appeals would not be able to enjoin a proceeding which has already occurred. See supra at 15, 18-20 (explaining Plaintiffs' harm).

Second, the Court finds that the public interest and the balance of equities are in Plaintiffs' favor. The public has an interest in assuring that citizens are not subject to unconstitutional treatment by the Government, and there is no evidence the SEC would be prejudiced by a brief delay to allow this Court to fully address Plaintiffs' claims. The SEC claims that the public interest weighs in its favor because the SEC "would be impeded in considering appropriate remedial action for any securities law violations that it finds in the proceeding, including potential limitations on future advisory work by Plaintiffs." Def. Br., Dkt. No. [48] at 46. But the Court does not find that it is ever in the public interest for the Constitution to be violated. The Supreme Court has held that the Appointments Clause "not only guards against [separation-of-powers] encroachment but also preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power." Freytag, 501 U.S. at 878. Both are important to the public interest. The Court further notes that the SEC is not

foreclosed from pursuing Plaintiff in federal court or in an administrative proceeding before an SEC Commissioner, and thus any small harm which it might face could be easily cured by the SEC itself.

### III. Conclusion

Because the Court finds Plaintiffs have proved a substantial likelihood of success on the merits of their claim that the SEC has violated the Appointments Clause as well as the other factors necessary for the grant of a preliminary injunction, the Court finds a preliminary injunction is appropriate to enjoin the SEC administrative proceeding and to allow the Court sufficient time to consider this matter on the merits.

The Court notes that this conclusion may seem unduly technical, as the ALJ's appointment could easily be cured by having the SEC Commissioners issue an appointment or preside over the matter themselves. However, the Supreme Court has stressed that the Appointments Clause guards Congressional encroachment on the Executive and "preserves . . . the Constitution's structural integrity by preventing the diffusion of appointment power." Freytag, 501 U.S. at 878. This issue is "neither frivolous nor disingenuous." Id. at 879. The Article II Appointments Clause is contained in the text of the Constitution and is an important part of the Constitution's separation of powers framework.

In addition, the Appointments Clause may not be waived, not even by the Executive. Id. at 880 ("Neither Congress nor the Executive can agree to waive this structural protection."). As this likely Appointment Clause violation "goes to the

validity of the [administrative] proceeding that is the basis for this litigation," id. at 879, it is hereby **ORDERED** that Defendant, the Securities and Exchange Commission, is preliminarily enjoined from conducting the administrative proceeding brought against Plaintiffs, captioned In the Matter of Gray Financial Group, Inc. Laurence O. Gray, and Robert C. Hubbard, IV, Administrative Proceeding File No. 3-16554 (May 21, 2015), including the hearing scheduled for October 26, 2015, before an Administrative Law Judge who has not been appointed by the head of the Department. This order shall remain in effect until it is further modified by this Court or until resolution of Plaintiffs' claim for permanent injunctive relief, whichever comes first.

The parties are **DIRECTED** to confer on a timetable for conducting discovery and briefing the remaining issues. The parties are then **DIRECTED** to submit by August 18, 2015, a consent scheduling order to the Court for consideration and a motion to stay this proceeding pending appeal, if applicable. If the parties are unable to agree to the terms of a scheduling order, the parties can submit their alternative submissions.

**IT IS SO ORDERED** this 4th day of August, 2015.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE